February 4, 1993 UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 92-2008

CUMBERLAND FARMS, INC.,

Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.

ON PETITION FOR REVIEW AND CROSS-APPLICATION
FOR ENFORCEMENT OF AN ORDER OF
THE NATIONAL LABOR RELATIONS BOARD

Before

Torruella, Selya and Stahl,

Circuit Judges.

Philip J. Moss, with whom Moon, Moss, McGill & Bachelder,

P.A., was on brief for petitioner.

Deborah E. Shrager, Attorney, with whom Jerry M. Hunter,

General Counsel, Yvonne T. Dixon, Acting Deputy General Counsel,

Nicholas E. Karatinos, Acting Associate General Counsel, Aileen

A. Armstrong, Deputy Associate General Counsel, and Peter

Winkler, Supervisory Attorney, were on brief for respondent.

TORRUELLA, Circuit Judge. This case is before us on

petition to review a decision and order of the National Labor

Relations Board (the "Board") filed by Cumberland Farms, Inc.

(the "Company"), and the cross-application of the Board to

enforce its order.1 The Board found that the Company violated

8(a)(1) and (3) of the National Labor Relations Act (the

"Act"), 29 U.S.C. 58(a)(1) and (3) (1973), by engaging in

coercive interrogation of its employees regarding their union

activities, discharging employees because of these activities,

and threatening to arrest a union agent while he distributed

handbills on public property. Accordingly, the Board ordered the

Company to reinstate the discharged employees with back pay, and

to post notices admitting these violations and disclaiming future

illegal action.

The Company challenges the findings of the Board,

claiming that they are unsupported by substantial evidence on the

record considered as a whole. We disagree and thus affirm the

Board's order.

THE FACTS

The record supports the Board's finding of the

following facts. The Company owns a dairy business that operates

four plants, including one in Florence, New Jersey. In the

summer of 1990, the United Food and Commercial Workers, Local

1360, United Food and Commercial Worker's International, AFL-CIO

(the "Union") began organizing in this plant. Two employees,

1 The Board's order is reported at Cumberland Farms, Inc., 307
N.L.R.B. 231 (1992).

John Mariano and John Bartosh, distributed union authorization

cards to the employees.

Shortly after they began the membership drive, their

immediate supervisor, Company foreman John Messner, questioned

them on several occasions regarding their actions and progress.2

Thomas Sweeney, the Company's Human Resources Director, also

questioned Mariano about his union activities in the presence of

Bartosh.3 Mariano and Bartosh admitted involvement with the

drive.

On August 3, 1990, six days after Mariano and Bartosh

began distributing Union authorization cards, the Company issued

a letter to the employees urging them not to sign. At 5:30 p.m.

of the same day, Emanuel Cavaco, the Company's Manager of Dairy

Operations, Robert Wood, the Florence plant manager, Sweeney, and

plant engineer Allen Canney met with Mariano in a conference room

and stated that they had received complaints about his

distribution of union authorization cards. Mariano responded

that he distributed them during non-working time. Cavaco

contended, however, that given the number of complaints received,

he must have engaged in these activities during working hours as

well. The meeting became more confrontational when Cavaco

2 On one occasion, Messner said, "I heard you guys are giving
out union cards. I'm all for the union; how's the guys
responding? Are you getting a lot signed?" On another
occasion, he said: "How are you guys doing? Have you got a lot
of cards signed? How's the guys responding? I'm all for the
union."

3 Sweeney asked, "Hey, John, . . . anything new I should know
about around here, like the union?"

-3-

accused Mariano of violating a Company no-solicitation rule.

After further questioning Cavaco stated, "John, we took you out

of the cooler; we put you in with the maintenance to learn

something, and this is how you repay us. Do you have anything to

say for yourself?" When Mariano said no, Cavaco suspended him

indefinitely. Wood and Canney then escorted Mariano off the

property and denied him access to his locker. Upon reaching the

gate Wood said, "John, didn't we just speak [about a salary

increase] a . . . week before this - and then you pull something

like this? Do you have anything to say?" Mariano left with the

impression that the Company would further investigate. However,

a week later, although no further inquiry was made, Mariano

received a letter from the Company terminating him due to a

"comprehensive investigation concerning the no-solicitation

policies."

On the day that Mariano was suspended, Cavaco, Sweeney,

and Wood subjected Bartosh to a similar interrogation regarding

alleged complaints against him for violation of the no-

solicitation rule. Bartosh flatly denied these charges. Cavaco

reminded Bartosh that the Company treated him favorably by moving

him to the maintenance department and that he therefore "owed

them." Bartosh was then escorted off the Company premises after

he locked his tools. When Bartosh returned to the plant to

retrieve his tools, Wood fired him for having solicited on

company property.

On August 16, various non-employee union organizers,

-4-

including Mariano and Bartosh, distributed union handbills on the

public highway near the Company's plant entrance. Although the

organizers were on public property, three Company security

officers told one of them that they were on Company property and

would be arrested if they did not leave. When they arrived, the

Florence police officers indicated that the handbillers were not

violating the law.

STANDARD OF REVIEW

We uphold the Board's findings of a violation as long

as substantial evidence on the record as a whole supports them,

even if we would have reached a different conclusion. 29 U.S.C.

160(e) and (f).

ANALYSIS

I. Coercive Interrogation

Section 8(a)(1) of the Act protects employees from

coercive interrogation regarding their union activities. NLRB v.

Otis Hosp., 545 F.2d 252, 256 (1st Cir. 1976). The existence of

coercion is generally a factual issue and depends on the totality

of the circumstances, id., including the setting of the

interrogation and the status of the interrogators. P.S.C.

Resources, Inc. v. NLRB, 576 F.2d 380, 383 (1st Cir. 1978). An

interrogation need not contain explicit threats to be coercive.

NLRB v. Gogin, 575 F.2d 596, 600 (7th Cir. 1978).

Given the circumstances of this case, we cannot

conclude that the evidence does not support the Board's findings

regarding the coercive nature of the interrogations. A team of

-5-

high level managers confronted Mariano and Bartosh shortly after

they began their concerted activities, questioned them about

their Union affiliation, and accused them of ingratitude.

Moreover, during the confrontations, the managers denied Mariano

and Bartosh access to the evidence against them, and in essence,

denied them an opportunity to defend themselves. Accordingly,

the Board reasonably found the interrogations coercive.

II. Interfering with lawful Union activities

An employer lacks a legitimate interest in interfering

with union activities which occur away from the employer's

property. Threatening to call the police, in the presence of

employees, to interfere with lawful union activity violates the

Act. NLRB v. Schlegel Oklahoma, Inc., 644 F.2d 842, 843 (10th

Cir. 1981). In the present case, Company security officers

threatened to have the union organizers arrested in front of

Mariano and Bartosh, who as unfair labor practice dischargees,

continued to retain employee status under the Act, see 29 U.S.C.

152(3). Accordingly, the Board correctly concluded that the

threat violated Section 8(a)(1) of the Act.

III. Discharge

When an employer discharges an employee for supporting

a union, he violates the Act, 29 U.S.C 158(a)(3), unless he

proves that he would have taken the same action in the absence of

the employee's union activities. NLRB v. Amber Delivery Serv.,

Inc., 651 F.2d 57, 68-69 (1st Cir. 1981). The employer fails to

meet this burden, however, if the proposed reason for discharge

-6-

is shown to be a mere pretext to disguise discrimination. NLRB

v. Pilgrim Foods, Inc., 591 F.2d 110, 118 (1st Cir. 1979)

In reaching its determination on motive, the Board may

consider the timing of the discharge, id. at 117, any differences

in the application of disciplinary rules, NLRB v. S.E. Nichols,

Inc., 862 F.2d 952, 959 (2d Cir. 1988), cert. denied, 490 U.S.

1108 (1989), the procedures used for discharge, NLRB v. American

Spring Bed Mfg. Co., 670 F.2d 1236, 1245 (1st Cir. 1982), the

investigation of the purported reasons for the discharge, Sioux

Products, Inc. v. NLRB, 684 F.2d 1251, 1259 (7th Cir. 1982), and

the purported justifications for the ultimate actions. American

Spring Bed Mfg. Co., 670 F.2d at 1245.

We conclude that substantial evidence on the record as

a whole supports the Board's findings regarding the discharges of

Mariano and Bartosh. The Company admits that it discharged the

employees for distributing union authorization cards. It argues,

however, that by distributing those cards, Mariano and Bartosh

were soliciting, and that the no-solicitation rule therefore

justified the discharges.

We conclude, as did the Board, that the Company's

reliance on the no-solicitation rule was a pretext to justify

discharges for engaging in union activity. At the time of the

discharges, the Company knew that Mariano and Bartosh were the

in-plant leaders of the union's organizational effort. The

Company then coercively interrogated them and then discharged

them based solely upon a cursory investigation, affording them no

-7-

opportunity to defend themselves. Moreover, the Company's

employees were generally unaware of the no-solicitation rule,

much less its enforcement. Indeed, Mariano and Bartosh were the

only employees that the Company ever disciplined for alleged

violations of the no-solicitation rule. Accordingly, the Board

reasonably determined that the no-solicitation rule was merely a

pretextual justification for an illegal discharge.

In a final attempt to salvage the validity of the

discharges, the Company claimed that Mariano and Bartosh engaged

in time card irregularities. However, the Company failed to even

mention this serious accusation at the time of the employees'

discharges. Thus, the Board reasonably afforded no credit to

this argument.

CONCLUSION

We have considered all other allegations made by the

Company and conclude that they lack merit. The Board's judgment

was rational and effectively promotes the goals of the Act. As

such, we affirm the Board's order.

The petition for review is denied and the Board's

request for enforcement of its order is granted.

Costs to the Board.

-8-